| Fill in this information to identify the case: |
|---|
| Debtor name **Goal's Gym LLC** |
| United States Bankruptcy Court for the: **DISTRICT OF UTAH** |
| Case number (if known) **22-23708** |

[X] Check if this is an amended filing

Stokes Law PLLC
2072 North Main Suite 102
North Logan, UT  84341
Telephone:  (435) 213-4771
Facsimile:  (888) 443-1529
Ted F. Stokes—14891
ted@stokeslawpllc.com
*Attorneys for Debtor*

# Plan of Reorganization for Small Business Under Chapter 11 Subchapter V

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.)**

**Goal's Gym LLC's** Plan of Reorganization, Dated **12/21/2022**

[If this plan is for a small business debtor under Subchapter V, 11 U.S.C. § 1190 requires that it include "(A) a brief history of the business operations of the debtor; (B) a liquidation analysis; and (C) projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization." The Background section below may be used for that purpose. Otherwise, the Background section can be deleted from the form, and the Plan can start with "Article 1: Summary"]

**Background for Cases Filed Under Subchapter V**

    A.  **Description and History of the Debtor's Business**
        The Debtor is a limited liability company established in the State of Utah.   The Debtor commenced operations in 11/2022 after it purchasing gym equipment from Johnson Health Tech North America, Inc. ("Matrix").  The Debtor is a small town fitness gym providing fitness opportunities to rural North Cache Valley, Utah.  The Debtor has grown as expected over its first year of operations and has now exceeded 200 members and expects membership to continue to strengthen especially as the long winter pends in Cache County.  The Debtor defaulted on payment to Matrix.  Debtor and Matrix attempted several methods to resolve their disputes outside of bankruptcy, however, ultimately, Matrix wanted to repossess the gym equipment for which it held a UCC-1 security interest.  Debtor was left with no choice but to seek protections in bankruptcy and to work out reorganization through Chapter 11 Subchapter V.

    B.  **Liquidation Analysis**
        To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as **Exhibit A.**   However, it is important to note that at this time there are not longer any unsecured creditors.  At the time filing the case, Matrix held and unsecured claim because of the deficiency of the collateral value to the allowed claim.  However, Matrix has made an 1111(b) election making its entire claim secured.  The deadline for non-governmental units to file claims has passed and the deadline for governmental units is 03/21/2022, although none are expected to be filed.

    C.  **Ability to make future plan payments and operate without further reorganization**
        The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.
        The Plan Proponent has provided projected financial information as **Exhibit B.**
        The Plan Proponent's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d)) of the Bankruptcy Code) for the period described in § 1191(c)(2) of $7,000.00.
        The final Plan payment is expected to be paid on **08/2025.  Plan duration is expected to be 30 months or fewer**.
        **Nick Carver, the husband of the Debtor's principal has committed to providing the Debtor the necessary capital each month to cover the $7,000.00 Plan Payment if there is an income shortfall**.

**Article 1: Summary**

| Debtor | Goal's Gym LLC | Case number (*if known*) | 22-23708 |
|---|---|---|---|
| | Name | | |

This Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of Goal's Gym LLC (the *Debtor*) from cash flow of operations and loan proceeds and/or infusion of capital.

This Plan provides for:  **X** classes of priority claims;
  **X** classes of secured claims;
  **X** classes of non-priority unsecured claims; and
  ___ classes of equity security holders.

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately **zero cents** on the dollar. That calculation is based upon the current unsecured creditors who have filed a valid proof of claim. The calculation does not include unsecured balances that might become of modifications to liens if any. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. A disclosure statement is not required of a Subchapter V Debtor; and therefore, creditors rights are defined herein.

### Article 2: Classification of Claims and Interests

2.01 **Class 1** ............................... All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8)).

2.02 **Class 2** ................................... The claim of **Matrix**, as a secured claim pursuant to its 1111(b) elections.

2.03 **Class 3** ............................... All non-priority unsecured claims allowed under § 502 of the Code.

### Article 3: Treatment of Claims

3.01 **Unclassified claims**  Under section § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes but shall be paid in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 cases. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

Debtor **Goal's Gym LLC**  
Name

Case number (*if known*) **22-23708**

| | |
|---|---|
| 3.02 **Administrative expense claims** | Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. |

Or

Each holder of an administrative expense claim allowed under § 503 of the Code, will be paid through the plan via regular monthly distributions in accordance with the amounts permitted by order of the court in accordance with such fee applications. If the SubChapter V Trustee receives and disburses plan payments to creditors, the Trustee shall receive 10% of the amount disbursed as compensation for said duty. All administrative costs must be consistent with section 1191(e) of the Code.

The Following chart lists the Debtor's estimated Administrative Expenses, and their proper treatment under the Plan.

| **CREDITOR AND TYPE** | **ESTIMATED AMOUNT TO BE OWED** | **Proposed Treatment** |
|---|---|---|
| Subchapter V Trustee | $4,000.00—estimated. Claim may be sought, approved, and paid after the effective date. | 100%--Paid on, before, or after confirmation in full based on fee application to the court. |
| Debtor's Bankruptcy Counsel | $11,000.00—estimated. Claim may be sought, approved, and paid after the effective date. | 100%--Paid on, before, or after confirmation in full based on fee application to the court. |
| Accountant | $2500.00—estimated. Claim may be sought, approved, and paid after the effective date. | 100%--Paid on, before, or after confirmation in full based on fee application to the court. |

3.03 **Priority tax claims—Class 1**  Each holder of a priority tax claim will be paid consistent with § 1129(a)(9)(C). The Following chart lists the Debtor's estimated priority claims, and their proper treatment under the Plan.

| **CREDITOR AND TYPE** | **ESTIMATED AMOUNT TO BE OWED** | **Proposed Treatment** |
|---|---|---|
| IRS -- Priority Tax Claim | 0.00 -- No claim has been or is expected to be filed. | 100%--Through Plan—Unimpaired (if any) |
| USTC -- Priority Tax Claim | 0.00 -- No claim has been or is expected to be filed. | 100%--Through Plan--Unimpaired (if any). |

3.04 **Secured claims—Class 2**

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. In addition, certain claims secured only by the debtor's principal residence, may require different treatment pursuant to § 1190(3) of the Code as set forth below, if applicable. Creditors who have made § 1111(b) elections shall be treated as 100% secured despite anything contrary in § 506 of the Code.

The following chart lists all classes containing the Debtor's secured prepetition Claims and their proposed treatment under the Plan:

| **Description** | **Impairment** | **Treatment** |
|---|---|---|
| **Secured Claim of:** Matrix's Claim shall be allowed on the effective date in the amount of $197,770.74 plus reasonable postpost-petitoin attorney's fees.; <br><br>**Collateral Description:**<br>See attached Exhibit A<br><br>**Allowed Secured Amount:** $197,770.74<br><br>**Priority of Lien:** First | Class 2 is impaired under the Plan. | **Adequate Protection:** Debtor will pay $4,000.00 monthly until confirmation.<br><br>**Confirmation Payment:** Debtor will pay $7,000.00 monthly to Matrix until its secured claim is paid in full.<br><br>**Interest Rate:** 0%<br><br>**Attorney's Fees:** Matrix's post-bankruptcy attorney's fees shall be paid as part of the secured claim.<br><br>**No Unsecured Deficiency:** By making § 1111(b), Matrix has forfeited all rights of an unsecured creditor including the right to seek a deficiency from the Debtor. Therefore, if the collateral is returned to Matrix through any provision herein, Matrix has no right in law or equity to seek deficiency from the Debtor upon discharge.<br><br>**Stay Relief Provisions:** In the event of default on the payment, Matrix shall send a certified letter and email to Stokes Law PLLC. Debtor shall have 10 days from the date of the letter to cure the default and pay Matrix's attorney's fees and costs, if any, incurred in drafting and the sending the letter. If the default is not cured within the 10 days, Matrix shall have the right to file a declaration with Court and shall receive stay relief without further notice or hearing.<br><br>**Collateral:** Matrix shall retain its liens on all of its collateral until paid in full pursuant to this Plan. |

3.05 **General Unsecured Claims—Class 3**

Class 3 is impaired. Class 3 shall receive all remaining funds after payment of all administrative costs, Class 1 and Class 2 payments. It is expected that Class 3 Claims shall receive approximately $0.00 as no such claim has been filed to date asserted an unsecured claim.

3.06 **Prospective quarterly fees** There are no quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7).

3.07  **Statutory fees**   There are no fees in accordance with 28 U.S.C. § 1930 due this case being filing under Subchapter V.

## Article 4: Summary of Treatment of Claims and Interests Under the Plan

4.01  Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - **Priority claims** excluding those in Article 3 | ☐ Impaired<br>☒ Unimpaired | Class 1 is unimpaired by this Plan, and each holder of a Class 1 Priority Claim will be paid in full, in cash, upon the later of the effective date of this Plan, or the date on which such claim is allowed by a final non-appealable order.   All Class 1 claims will be paid in full no later than 08/2027. |
| Class 2 – **Secured claim of**<br>[*Johnson Health Tech North America, Inc. dba Matrix Fitness*] | ☒ Impaired<br>☐ Unimpaired | Class 2 is unimpaired.   Class 2 shall receive its entire secured claim pursuant to its 1111(b) election.   However, Class 2 in making an 1111(b) election surrenders any and all rights to seek deficiency from the debtor as it has surrendered it's unsecured claim. |
| **Class 3 – Non-priority unsecured creditors** | ☒ Impaired<br>☐ Unimpaired | Class 3 is impaired.   Class 3 shall receive all remaining funds after payment of all administrative costs and Class 1 and Class 2 payments.   It is expected that Class 3 Claims shall receive approximately $0.00 total. |

## Article 5: Allowance and Disallowance of Claims

5.01  **Disputed Claim**   A *disputed claim* is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either:

(i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02  **Delay of distribution on a disputed claim**   No distribution will be made on account of a disputed claim unless such claim is allowed [by a final non-appealable order].

5.03  **Settlement of disputed claims**   The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.



### Article 6: Provisions for Executory Contracts and Unexpired Leases

6.01 **Assumed executory contracts and unexpired leases**

(a) The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date:

None

(b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than **45** days after the date of the order confirming this Plan.



### Article 7: Means for Implementation of the Plan

**PAYMENTS:**

If the Plan is confirmed under §1191(a), payments to Creditors provided for in the Plan will be made by the Trustee/Debtor pursuant to §1194(a). Once the Trustee's service is terminated under § 1183(c), the Debtor shall make Plan payments except as otherwise provided in the Plan or in the order confirming the Plan.   If the Plan is confirmed under section § 1191(b), except as otherwise provided in the Plan or in the order confirming the Plan, the Trustee/Debtor shall make all Plan payments to creditors under the Plan.

Debtor shall make monthly plan payments of $7,000.00 a month to satisfy its obligation to Classes of Creditors mentioned above. Unsecured creditor will receive their portion of the plan payment in accordance with their classification and pursuant to the pro rata portion of the their claims, unsecured creditor shall receive no less than $0.00 total.

**ADDITIONAL MEANS OF IMPLEMENTATION:**

1**. RETENTIION OF PROPERTY OF THE ESTATE:**   Debtor shall retain all property of the estate during the implementation of the Plan.

2-**DISPOSABLE INCOME REQUIREMENT:**   Debtor shall provide all disposable income to the Plan from its regular monthly operations.

3-**MATRIX CLAIM REQUIREMENTS:**  Matrix shall, within 30 days of confirmation of the Plan, file an amended proof of claim disclosing post petition attorney's fees.  Furthermore, Matrix has stipulated with Debtor that it shall not seek a Motion to Dismiss the case.

4-**STAY RELIEF PROVISIONS:**  The Stay Relief Provisions of Section 3.04 above are incorporated herein by reference.

5. **METHOD OF DISTRIBUTION OF CLAIMS:**   Subject to Bankruptcy Rule 9010 and unless otherwise provided herein, all distributions under the Plan to be made by the Reorganized Debtor to the holder of an Allowed Claim shall be mailed by first class mail, postage prepaid, to the address of such holder as listed on the Schedules as of the Effective Date, unless the Debtor are notified in writing of a change of address, including, without limitation, by the filing of a proof of claim or notice of transfer of claim filed by such holder that provides an address for such holder different from the address reflected on the Schedules. The Debtor shall have no obligation to locate holders whose distributions or notices are properly mailed but nevertheless returned.

6. **CASH PAYMENT METHODS ON CLAIMS:**   Any payment of Cash made by the Reorganized Debtor (including the Disbursement Agent) pursuant to the Plan shall be made by regular check; *provided, however,* that the Reorganized Debtor shall not be obligated to make any Cash payment under the Plan unless the payment exceeds ten dollars ($10); *provided, further,* that Cash equal to 100% of the distributions to which the holder of a such a Claim would otherwise be entitled to receive under the Plan shall be held for the benefit of such holder until an aggregate of at least ten dollars is payable to such holder and at such time the holder shall receive a payment equal to 100% of the distributions to which it would otherwise be entitled; *provided, further*, that if the Reorganized Debtor or the Disbursement Agent may make Plan payments by electronic transfer if they determine that it is more convenient or cost-effective to do so.

7. **REQUIREMENT FOR TAX WITHHOLDINGS:**   The Reorganized Debtor shall withhold from any Cash or property distributed under the Plan such amounts as the Debtor is obligated under non-bankruptcy law to withhold and transmit to taxing authorities (if any).

8. **EFECTIIVE DATE AND DISOLOWANCE OF CLAIMS:**   Any Claim which is not Allowed as of the Effective Date shall be Disallowed, forever barred as against the Debtor, and shall receive no payments or distribution under this Plan; provided, however, that any Claim which is a Disputed Claim solely by reason of an objection or other legal challenge that is pending on the Effective Date shall be treated as a Disputed Claim and may receive payments or distributions to the extent it later becomes Allowed, in whole in part, upon resolution of such objection or challenge.

9. **LATE CLAIMS:**   No Claim that is late-filed (*i.e.*, filed after the applicable Bar Date) shall be treated or paid as an Allowed Claim under this Plan unless the tardiness is excused and the late-filing of such Claim specifically is permitted pursuant to a Final Order entered prior to the Effective Date.

10. **VESTING OF CAUSES OF ACTION:**   Pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code, upon entry of the Confirmation Order, the Debtor and Reorganized Debtor's rights to object to all Claims asserted against the Estate, and all of the Debtor' or Estate's Causes of Action, shall vest in the Estate, including without limitation: (1) the Debtor' Causes of Action asserted in any adversary proceeding, U.S. District Court litigation, state court proceeding, or any other proceeding that is pending as of the Confirmation Date; (2) all of the Debtor' claims or Causes of Action disclosed in the Schedules; (3) any of the Debtor' claims or Causes of Action asserted in any contested matter pending on the Confirmation Date; and (4) any and all other claims and Causes of Action that the Debtor hold prior to the Confirmation Date, including, but not limited to, claims for unpaid accounts receivable. Notwithstanding anything in the Plan to the contrary, no provision in this Plan is intended or shall be construed to preclude or otherwise bar the Debtor or Reorganized Debtor from pursuing any claims arising under chapter 5 of the Bankruptcy Code or under other applicable law, other than any claims against Matrix, and and all such claims are released by this Plan.  Among other things, no Person sued pursuant to Sections 547, 548, 549, 550, 553 of the Bankruptcy Code or otherwise may argue that confirmation of this Plan precludes such claim on grounds of res judicata, issue preclusion or otherwise.

11. **RESERVATION OF CLAIMS OR CAUSES OF ACTION:**   Unless a Claim or Cause of Action against any Person is expressly waived or released in the Plan or any Final Order of the Bankruptcy Court, the Debtor expressly reserves such Claim or Cause of Action for later adjudication (including without limitation, Claims and Causes of Action not specifically identified or which the Debtor may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts and circumstances which may change or be different from those which the Debtor now believe to exist) and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claims preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such Claims or Causes of Action upon or after the confirmation or consummation of the Plan based on the Disclosure Statement, the Plan, or the Confirmation Order, except where such Claims or Causes of Action have been expressly released in the Plan or any other Final Order of the Bankruptcy Court

### Article 8: General Provisions

| | | |
|---|---|---|
| 8.01 | **Definitions and rules of construction** | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:<br><br>**1.** "Administrative Expense Claim" shall mean a Claim under 11 U.S.C. § 503(b) and that is entitled to priority under 11 U.S.C. § 507(a)(2) including, without limitation, Claims for:<br><br>(a) fees and expenses of Professionals, and<br>(b) all fees and charges assessed against the Estate pursuant to 28 U.S.C. § 1930.<br><br>**2.** The "Adversary Proceeding" shall mean adversary proceeding filed by the Debtor against Incancion Bueno LLP, if any.<br><br>**3.** "Bar Date" shall mean: (i) 12/01/2022 with respect to a Claim against the Estate other than a Claim of a governmental unit; and (ii) 03/21/2022 with respect to a Claim of a governmental unit against the Estate.<br><br>**4.** "Cash" shall mean lawful currency of the United States of America (including wire transfers, cashier's checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks and money orders). |
| 8.02 | **Effective Date** | The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | **Binding Effect:** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 8.06 | **Controlling Effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Utah govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.] |

See 8.07 on next page.

| 8.07 | **Retention of Jurisdiction** | **Retention of Jurisdiction**. After the Effective Date, the Bankruptcy Court shall have original jurisdiction of all matters arising in, arising under or related to the Bankruptcy Case or Plan pursuant to and for the purposes of Sections 105(a) and 1142 of the Bankruptcy Code, including but not limited to the following specific matters: |
|---|---|---|

(a) Compensation. The Court shall retain jurisdiction to hear and determine all applications by Professionals and others for compensation and reimbursement of expenses.

(b) Distributions. The Court shall retain jurisdiction to resolve disputes concerning distributions to holders of Allowed Claims as provided herein.

(c) Tax Claims. The Court shall retain jurisdiction to hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code.

(d) Objections to Claims. The Court shall retain jurisdiction (a) to hear and determine any objections to Claims filed both before and after the Confirmation Date, (b) to allow or disallow any Claim in whole or in part, (c) to decide any controversies as to the classification of any Claims, and (d) to estimate any Disputed Claim.

(e) Litigation. The Court shall retain jurisdiction to hear and determine any and all adversary proceedings, applications, contested matters and other litigated matters pending on the Confirmation Date or filed in the Bankruptcy Court thereafter, including any and all claims that might be filed by the Reorganized Debtor under chapter 5 of the Code.

(f) Determine Claims Arising Post-Confirmation. The Court shall retain jurisdiction to determine any Claim or liability to a governmental unit, any party in interest and/or any third-party which may be asserted as a result of the transactions contemplated herein.

(g) Plan Modification. The Court shall retain jurisdiction to hear applications, if any, to modify the Plan in accordance with § 1127 of the Bankruptcy Code. After Confirmation of the Plan, the Reorganized Debtor may also, so long as it does not adversely and materially affect the interests of creditors, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order in such manner as may be necessary to carry out the purpose and effect of the Plan.

(h) Plan Disputes. The Court shall retain jurisdiction to hear and determine disputes arising in connection with the Plan or its implementation, including without limitation disputes relating to the execution of agreements, documents or instruments required to be executed pursuant to the terms of the Plan, or arising under or relating to the interpretation of agreements, documents or instruments executed in connection with the Plan. Among other things, the Court shall have jurisdiction to hear and decide any claim or allegations that a transaction contemplated under and/or consummated in connection with this Plan was or is ultra vires, a fraudulent transfer, a fraudulent conveyance or avoidable on any basis in law or equity.

(i) Plan Implementation. The Court shall retain jurisdiction to construeand to take any action to enforce the Plan and issue such orders as may be necessary for the implementation, execution and consummation of the Plan.

(j) Plan Corrections. The Court shall retain jurisdiction to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purpose and the intent of the Plan.

(k) Closing the Bankruptcy Case. As soon as the Reorganized Debtor determine that there is no further need for administration of the Case by the Bankruptcy Court, the Reorganized Debtor shall seek an order closing the Case pursuant to 11 U.S.C. § 350 upon (i) the filing of a final report, (ii) after twenty-eight (28) days' notice to parties-in-interest, and (iii) the entry of an appropriate final decree and/or order of the Court closing the Case. The Debtor intend to do so as soon as possible, likely on the Effective Date, notwithstanding that payment obligations may remain under the Plan. Absent an order extending the time for entry of a final decree entered after notice and opportunity for hearing, a final decree closing the Bankruptcy Case shall be entered not later than 1 year after the Confirmation Date. The Debtor will comply with Local Rule 3022-1 in seeking entry of a final decree.

### Article 9: Discharge

**[Discharge if the Debtor is a corporation under Subchapter V]**

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

(i) imposed by this Plan; or

(ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

(i) on which the last payment is due after the first 5 years of the plan, or as otherwise provided in § 1192;

or

(ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy procedure.

If at anytime, Matrix receives possession of its collateral by stay relief or voluntary surrender, the entire allowed claim of Matrix against the Debtor shall be deemed to have been paid in full as if all plan payments had been made because of Matrix's 1111(b) elections; and therefore, Debtor may be granted a discharge assuming all other plan provisions have been satisfied. If Matrix receives possession of its collateral it may retain payments received from the Debtor to Matrix prior to Matrix receiving possession of it collateral.

### Article 10: Frequently asked Questions

**What Is the Goal's Gym LLC Attempting to Do in Chapter 11?** Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**Why Am I Receiving This Plan?** In order to confirm a plan of reorganization [or liquidation], the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I Determine Which Class I Am In?** To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor. If you do not have any collateral, your claim is unsecured. The pertinent section of the Plan dealing with your class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed.

**Why Is Confirmation of a Plan of Reorganization Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Reorganization?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

**Am I Entitled to Vote on the Plan?** Any creditor of the Debtor whose claim is IMPARIED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has

| Debtor | Goal's Gym LLC | Case number (*if known*) | 22-23708 |
|---|---|---|---|
| | Name | | |

been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**When Is the Deadline by Which I Need to Return My Ballot?** The Plan is being distributed to all claim holders for their review, consideration and approval. The deadline by which ballots must be returned will provided to parties. Ballots should be mailed to the following address:

Stokes Law PLLC
2072 North Main, Suite 102
North Logan, UT 84341

Respectfully submitted 03/29/2023,

**X** */s/ Yessica Mendez*      **Yessica Mendez**
[Manager, Goal's Gym LLC]      [Printed name]

**X** */s/ Ted F. Stokes*      **Ted F. Stokes 14891**
[Signature of the Attorney for the Plan Proponent]      [Printed name]

# EXHIBIT A

## United States Bankruptcy Court
### District of Utah

In re **Goal's Gym LLC**
Debtor(s)

Case No. **22-23708**
Chapter **11**

## LIQUIDATION SUMMARY/ANALYSIS

| Description | Total Amount | Real Property | Personal Property |
|---|---|---|---|
| Total Property Value | 95,000.00 | 0.00 | 95,00.00 |
| Less: | | | |
| Schedule D. Secured Claims | 197,770.74 | 0.00 | 197,770.74 |
| Schedule C. Exemptions | 0.00 | 0.00 | 0.00 |
| **Interest in Nonexempt Property** | 0.00 | 0.00 | 0.00 |
| Less: | | | |
| Estimated Chapter 7 Admin Expenses | 0.00 | | |
| Schedule E. Priority Claims | 0.00 | | |
| **Available to General Unsecured** | 0.00 | | |
| Total General Unsecured | 0.00 | | |
| Percent Distribution | 0.00% | | |
| **Details:** | | | |
| Unsecured from Schedule D | 0.00 | 0.00 | 0.00 |
| Unsecured from Schedule E | 0.00 | | |
| Unsecured from Schedule F | 0.00 | | |
| Estimated Chapter 7 Administrative Expenses: | | | |
| 11§326 Trustee Compensation on $**0.00** | 0.00 | | |
| Add'l Trustee Cost as **0**% of §326 Fee | 0.00 | | |
| Additional Admin Expense | 0.00 | | |
| Total Estimated Admin Expense | 0.00 | | |

**Exhibit B**

# United States Bankruptcy Court
### District of Utah

In re **Goal's Gym LLC**  
Debtor(s)

Case No. **22-23708**  
Chapter **11**

## Projected Budget in Accordance with 11 U.S.C. Section 1190(1)(C)

FINANCIAL REVIEW OF THE DEBTOR'S BUSINESS  (NOTE: ONLY INCLUDE information directly related to the business operation.)

PART A - ESTIMATED AVERAGE FUTURE GROSS MONTHLY INCOME:

    2. Gross Monthly Income From Business Operations      $ **6,000.00**

PART B - ESTIMATED FUTURE MONTHLY EXPENSES:

| | |
|---|---:|
| 1. Merchant Fees | 140.09 |
| 2. Utilities | 189.01 |
| 3. Repairs and Maintenance | 250.00 |
| 4. Insurance | 150.08 |

| | |
|---:|---:|
| **Estimated Total Expenses** | **$729.18** |
| **Estimated Net Business Income** | **$5,270.00** |
| **Estimated Contribution from Nick Carver** | **$1,730.00** |

PART C - ESTIMATED AVERAGE NET MONTHLY INCOME:      $ **7,000.00**

Stokes Law PLLC
2072 North Main Suite 102
North Logan, UT  84341
Telephone:  (435) 213-4771
Facsimile:  (888) 443-1529
Ted F. Stokes—14891
ted@stokeslawpllc.com
*Attorneys for Debtor*

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF UTAH

| In re | Case No.  22-23708—RKM |
|---|---|
| GOAL'S GYM LLC, | DECLARATION OF NICK CARVER |
| Debtor. | (Chapter 11 Subchapter V) |

I, Nick Carver, state that:

1. I am the husband of the sole member and manager of the Goal's Gym LLC, Yessica Mendez.

2. I am over 18 years of age and, I am competent to testify.

3. If called to testify before this court, my testimony would the same as in this Declaration.

4. My career is primarily in auto sales.  I run the local auto auction in Logan, Utah and I own and operate a car dealership.

5. Just as Yessica assists me with my businesses, I also assist Yessica with Goals Gym where I have time to do so.  In other words, these are small town, family ran businesses.

6. Yessica, counsel, and I have met and discussed the issues before the Court, namely the stay relief motion and the upcoming Plan that will be filed.

1

7. We have discussed that the feasibility of the confirmation plan is a main issue before the Court; and therefore, I provide the Court this declaration.

8. Goals Gym is on track with where we want it. As the monthly operating reports show, the business made $5,843.70 in October, the first full month of the bankruptcy. The November operating report has not been filed yet, but it will show income of $6,205.88, which is higher than the Debtor projected in its most recent six-month projection.

9. Although it is unclear what Matrix believes is owed on the equipment, being that its Motion for Stay Relief says $171,626.25 and its Reply and Proof of Claim says $197,770.74, I will supplement the Debtor's income to assure that Matrix is paid in full through the Plan.

10. I have attached proof of my income from the managing the local auto auction. As shown by the Exhibit, I receive $9,000.00 a month plus commissions. As shown from my first three months running the auction, I made on average $9,190.00.

11. Additionally, I continue to run and operate my business Auto Matrix Group LLC. It is difficult for me to say what my monthly income is on average as I have an accountant to who deciphers that each year for tax purposes, but from a review of the financials, it looks like Auto Matrix Group LLC is netting our family about $5,128.80 month on average in 2022. As shown from the 2021 Auto Matrix Tax Returns attached hereto, that's slightly down from 2021 when the Auto Matrix Group LLC netted our family $6,714.41 monthly, but that is expected as I spend time managing the auto auction now. Therefore, my gross monthly income averages about $14,318.80.

12. I am not without financials issues though. I have repayment plan to the Utah State Tax Commission that I pay monthly for $2,200.00 a month. However, we live a relatively modest lifestyle with a small mortgage payment of $1,538.10 to Guild Mortgage. In reviewing

my personal budget with Yessica and counsel, we net, after all personal expenses, about $5,000.00.

13. That coupled with the $5000.00 to $6000.00 of Goal's Gym income would be more than sufficient to pay a Plan payment necessary to satisfy Matrix through the Plan.

14. After discussing the issues with Yessica and Counsel, it sounds like Goals Gym would be proposing a plan that pays between $5000.00 and $8000.00 a month, far more that the $3296.18 that Matrix states would be the largest possible plan payment.

15. Simply put, whatever shortfall, if any, Goals Gym has in funding a confirmable plan, I will make up with my income.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information and belief.

Executed on 12/06/2022.

By /s/ *Nick Carver*
Nick Carver
*Declarant*

[Not notarized pursuant to 28 U.S.C. § 1746]